774 F.2d 1161
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Joe Roberts Borders, Plaintiff-Appellant,
v.
Yates-American Machine Company, Inc., Defendant-Appellee.
 No. 84-5434
 United States Court of Appeals, Sixth Circuit.
 9/24/85
 
 E.D.Tenn.
 AFFIRMED
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE
 Before: JONES and CONTIE, Circuit Judges; and EDWARDS, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiff Joe Roberts Borders appeals from a jury verdict in favor of defendant Yates-American Machine Company, challenging the jury instructions delivered by the district court. For the reasons that follow, we affirm.
 
 
 2
 On April 5, 1982, Borders filed a complaint against Yates-American (hereinafter 'Yates') alleging that on April 8, 1981, plaintiff suffered injuries while operating a planing machine manufactured by Yates and sold to Borders' employer, Cleveland Chair Co. Borders alleged that his injuries were caused by Yates' negligent design and the unreasonably dangerous and defective product, the B-24 planer. Borders alleged that the machine had inadequate safeguards and electrical shutoff switches which rendered the machine inherently dangerous and defective under the theory of strict liability. Yates answered asserting that Borders' contributory negligence and misuse caused his injury and that the negligence of Cleveland Chair in failing to provide a safe workplace and to properly instruct was an intervening cause.
 
 
 3
 At trial, Borders testified that on the date of the injury, April 8, 1981, he had been operating the B-24 planer although he was not the regular operator. During operation, a board got stuck, Borders placed his hand in the machine where there was no guard, and his hand was pulled into the outfeed roller. Borders testified that he did not cut off the machine because he had previously loosened boards without stopping the machine. Borders testified that he had a glove on his hand, that no cutoff switches were within reach once his hand was caught, and that he did not feel that what he was doing was dangerous. Borders testified that he was given limited instructions on using the planer and was not told to be careful, although he was completely familiar with the machine, and taught others to use the planer. Borders indicated that he had never been told to shut off the machine before 'cleaning' it and that he just didn't think. Further, 'if there had of been more light there, it would have made a whole lot of difference.'
 
 
 4
 Reed Wallace Harris, head of maintenance at Cleveland Chair Company, testified that Borders was a supervisor and supervisors had to know how to run all 88 different machines in the plant. Harris testified that the proper procedure if wood is caught in the machine is to (1) cut off the machine, (2) lower the rollers, (3) raise the heads, and (4) knock the wood out with a stick. Wood could also be removed by reversing the rollers. Prior to Borders', there had never been an accident on the machine since its receipt in July 1977.
 
 
 5
 Ronald Cox, plaintiff's expert, testified that the American National Standards Institute requires that operators receive instructions on the hazards of a machine, not wear gloves, and use a push stick to guide work.
 
 
 6
 John Russell Blakely, a Yates sales and service representative, testified that the guards on the machine, over which Borders had to reach in order to be injured, are painted orange to warn of danger points. Blakely testified that when the machine was delivered he explained the methods to remove wood from the machine and that the machine was delivered as ordered by Cleveland Chair.
 
 
 7
 Shop Superintendent Verlin Green testified that '[a]ny machine in that whole plant you've got to treat like they're a cocked gun, and it's going to go off and kill you,' and that workers were told never to stick their hands in the machine.
 
 
 8
 Patrick Rich, Chief Engineer at Yates, testified that the control panel was located at the operator's position, that the B-24 met OSHA guidelines, that Yates would provide additional guards if requested by customers, and that the machine was built to Cleveland Chair's specifications. Gerald Toppen, Yates Director of Sales and Engineering, testified that the B-24 was manufactured to the customer's order and specifications.
 
 
 9
 On March 30, 1984, the jury returned a verdict in favor of Yates, on April 4, Borders moved for a new trial, and on April 26, the motion for a new trial was denied.
 
 
 10
 Borders alleges that the trial judge gave undue emphasis to plaintiff's burden, the doctrine of misuse, and the concept that the manufacturer is not an insurer. Fed. R. Civ. P. 51 provides that
 
 
 11
 No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection.
 
 
 12
 Erwin v. Keck, 351 F.2d 403, 405 (6th Cir. 1965); Batesole v. Stratford, 505 F.2d 804, 807 (6th Cir. 1974). See Howard v. Cincinnati Sheet Metal and Roofing Co., 234 F.2d 233, 237 (7th Cir. 1956). Rule 51
 
 
 13
 is satisfied only if it is clear that the judge was made aware of the possible error in or omission from the instructions. . . . However, assignments of error on points not included in the appellant's proposed instructions nor covered in his objections to the appellee's proposals are not properly preserved for appeal.
 
 
 14
 Gradsky v. Sperry Rand Corp., 489 F.2d 502, 503 (6th Cir. 1973) (footnote omitted); Transcontinental Leasing, Inc. v. Michigan National Bank of Detroit, 738 F.2d 163, 167 (6th Cir. 1984). However,
 
 
 15
 the federal courts have recognized a narrow exception to the general prohibition of Rule 51 in cases where an objection would have been a mere 'formality' under the circumstances . . . or where the error was 'obvious and prejudicial' and required action by the reviewing court 'in the interests of justice.'
 
 
 16
 Batesole, 505 F.2d at 808. Since no objection was made to repetitiveness of the burden of proof, this assignment of error is not reviewable.
 
 
 17
 'Under Tennessee law, the jury charge will be 'viewed in its entirety' or 'considered as a whole' in order to determine whether the trial judge committed prejudicial error.' Abbott v. American Honda Motor Co., Inc., 682 S.W.2d 206, 209 (Tenn. App. 1984). Likewise, this court has noted that
 
 
 18
 [t]he function of the reviewing court with respect to jury instructions is to satisfy itself that the instructions show no tendency to confuse or mislead the jury with respect to the applicable principles of law. . . . In determining whether the instructions are erroneous, they must be considered as a whole, . . . however, a subs antial and prejudicial error in even a single instruction may require reversal.
 
 
 19
 Miller v. Utica Mill Specialty Machinery Co., 731 F.2d 305, 307 (6th Cir. 1984); J. R. Cobb v. Union Railway Co., 318 F.2d 33, 37 (6th Cir.), cert. denied, 375 U.S. 945 (1963) ('Flaws can be found in almost any charge by separating certain paragraphs from the whole. Thus, the charge must be considered as a whole. . . .'); Batesole, 505 F.2d at 809; Gradsky, 489 F.2d at 503.
 
 
 20
 We have held that 'undue repetition or emphasis of the position or burden of one of the litigants can call for the granting of a new trial. . . . However, unless such conduct indicates that prejudice was thereby visited upon a litigant, it will not call for reversal,' Brown v. Addressograph-Multigraph Corp., 300 F.2d 280, 283 (6th Cir. 1962); Howard, 234 F.2d at 236; Wetherbee v. Elgin, Joliet & Eastern Railway Co., 191 F.2d 302, 311-12 (7th Cir. 1951), cert. denied, 346 U.S. 867 (1953).
 
 
 21
 Borders is correct that the trial judge instructed that a manufacturer is not an insurer. However, these instructions are isolated to essentially three pages, app. at 238, 239, 246, of a 27-page charge. Taking the charge as a whole, these instructions are not unduly repetitive and, as a correct statement of the law, did not prejudice plaintiff.
 
 
 22
 With respect to the instructions on misuse, the dispositive question is whether Borders suffered any prejudice from this repetition. While it is difficult to conclude on what ground the jury decided the case, there was ample evidence supporting all the defenses. Since it is unlikely that a different result would have prevailed in the absence of the repetition, there is no reversible error.
 
 
 23
 Borders challenges the trial court's misuse instructions on substantive grounds as well. Borders admits that no proper objection to this was entered but claims that we should consider the error because it is obvious. Borders contends that the court erred by instructing that the manufacturer is liable only for injuries sustained in the product's 'normal' or 'intended' use rather than in all reasonably foreseeable uses. This assignment of error is frivolous since the district court incorporated the concept of reasonably foreseeable uses in its definition of misuse. App. at 238, 243, 247, 251. Accordingly, this assignment of error does not qualify for an exception to Rule 51 and should not be considered. See Ellithorpe v. Ford Motor Co., 503 S.W. 2d 516, 519 (Tenn. 1973); Jackson v. Tennessee Valley Authority, 413 F. Supp. 1050, 1058 (M.D. Tenn. 1976), aff'd, 595 F.2d 1120 (6th Cir. 1979).
 
 
 24
 Borders also assigns as error the instructions on intervening cause and the employer's role in specifying how the machine should be built. Borders does not challenge the instructions as incorrect statements of law, but on the ground that there was insufficient evidence to support such instructions.
 
 
 25
 These assertions of error are without merit. Borders' own testimony suggests that he received inadequate instructions on operating the machine and this justifies the intervening cause instruction on the ground that the jury could find that the employer's negligence was an intervening cause. See Abbott v. American Honda Motor Co., 682 S.W.2d 206, 212 (Tenn. App. 1984); Evridge v. American Honda Motor Co., 685 S.W.2d 632, 635 (Tenn. 1985); Watson v. Southern Bus Lines, 186 F.2d 981, 983 (6th Cir. 1951). Likewise, there was testimony that the B-24 was built to Cleveland Chair's specifications and that Yates would provide any safety device Cleveland Chair requested.
 
 
 26
 'The test on appeal for a court's charge to the jury is: Does the charge, taken as a whole, fairly and adequately submit the issues in the case to the jury?' Nolan v. Greene, 383 F.2d 814, 816 (6th Cir. 1967); United States v. Martin, 740 F.2d 1352, 1361 (6th Cir. 1984); DSG Corp. v. Anderson, 754 F.2d 678, 682 (6th Cir. 1985). In Tennessee, '[t]o support a jury instruction there only needs to be some evidence in the record which would support a verdict on that instruction, even though slight.' Norman v. Fisher Marine, Inc., 672 S.W.2d 414, 421 (Tenn. App. 1984). Since there was some evidence supporting the court's charge, Borders' assignments of error are without merit.
 
 
 27
 The plaintiff also asserts as error the court's failure to deliver the following instruction.
 
 
 28
 That while a manufacturer is not 'at fault' in the sense that it is negligent, it is held personally responsible in a products liability action for the level of safety which it has selected; responsibility for the production decisions should remain with the party which made them. Woody vs. Combustion Engineering, Inc., 463 F. Supp. 817, at 821 (E.D. Tenn. 1978).
 
 
 29
 The Woody case involved a question of successor liability rather than the issue in this case of the liability of a manufacturer and a purchaser who specifies what product he desires. In light of this distinction, the district court did not err in declining to deliver the instruction.
 
 
 30
 The jury, during deliberations, proffered a question which the court phrased and answered as follows:
 
 
 31
 The Court: Ladies and Gentlemen of the jury, I've got a guestion here, what defines negligence on the manufacturer's part?
 
 
 32
 Negligence has nothing to do with this.
 
 
 33
 Id. at 670. This is a correct, concise statement of the law. Ellithorpe, 503 S.W.2d 519-21.[1]
 
 
 34
 Accordingly, the judgment of the district court is AFFIRMED.
 
 
 35
 JONES, Circuit Judge, concurring.
 
 
 36
 Although I concur in the disposition of this appeal, I write separately to express my views regarding the jury instructions in this case. On the whole, the jury instructions were adequate, but I find that several instructions, particularly the instruction regarding operator misuse, were repeated in a way that began to approach undue, prejudicial emphasis. See Brown v. Addressograph-Multigraph Corp., 300 F.2d 280 (6th Cir. 1962). In addition, I believe that the district court misapprehended the jury's request for further information regarding negligence. When the court responded that negligence was not the issue, the court correct. The question revealed, however, that the jury did not understand the difference between negligence and strict liability and needed further instruction on the role of fault in a strict liability case. The court's reading of the statutory definition of 'defect' was a legally adequate instruction but, practically, may not have precisely clarified the issue for the jury.
 
 
 
 [1]
 Although Borders' complaint alleged negligent design, this basis of liability was abandoned as indicated by the final pretrial order, app. at 18, and, the fact that Borders requested no instruction on negligence, app. at 24-44