106 F.3d 401
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
PENN-AMERICA INSURANCE CO., Plaintiff-Appellant Cross-Appellee,
v.
CLT PARTNERSHIP, Defendant-Appellee Cross-Appellant,
and
Joe Hollingshed; First Tennessee Bank National Association;
Max Morey, doing business as The Morey Insurance
Agency, Defendants-Appellees (94-6442/3)
Defendants (94-6444)
 Nos. 94-6422, 94-6443 and 94-6444.
 United States Court of Appeals, Sixth Circuit.
 Jan. 30, 1997.
 
 Before: SILER and BATCHELDER, Circuit Judges, and CARR, District Judge.*
 ALICE M. BATCHELDER, Circuit Judge:
 
 
 1
 Plaintiff Penn-America Insurance Company ("Penn") filed this action in the United States District Court for the Eastern District of Tennessee, seeking declaratory judgment that it was not liable to pay claims arising out of a fire that destroyed a building. The plaintiff appeals, and defendant CLT Partnership cross appeals, the district court's order granting final judgment on various motions for partial summary judgment and entering the jury's verdict. The other defendants are Joe Hollingshed, First Tennessee Bank N.A. ("Bank"), and Max Morey d/b/a the Morey Insurance Agency ("Morey"). We AFFIRM.
 
 I. BACKGROUND
 
 2
 Penn issued a fire-insurance policy to Hollingshed and CLT to cover an apartment building at 1019 McCallie Avenue, Chattanooga ("Building"), from October 17, 1991, to October 17, 1992. The Bank was a mortgagee on the policy. The complaint alleges that on January 14, 1992, arson destroyed the Building and that the policy was suspended "due to breach of a warranty concerning smoke detectors in each living unit as required by the policy...." In addition, the plaintiff claimed the policy was void ab initio, because Hollingshed and CLT did not disclose a fire Hollingshed had previously sustained at 938 McCallie Avenue, Chattanooga ("Thomas House"). The complaint asserts that because the policy was void ab initio, no contract with the Bank ever existed, and the policy did not require Penn to pay the Bank. The complaint further alleged Hollingshed had engaged in concealment. While the plaintiff was willing to refund premiums Hollingshead and CLT had paid, it sought declaratory judgment that it was not liable for the claims on the policy from the January 14 fire.
 
 
 3
 The district court later allowed Penn to amend its complaint to allege that Morey, by filling out the Hollingshed/CLT insurance-policy application and not mentioning the previous fire, engaged in intentional and negligent misrepresentation, but for which Penn would not have insured the Hollingshed/CLT building. To the extent Penn might be held liable to Hollingshed, the Bank, or CLT, Penn sought recovery against Morey.
 
 
 4
 There were several summary judgment motions. The district court granted summary judgment for Penn against CLT and Hollingshed, and granted summary judgment for the Bank against Penn, holding that the Bank was entitled to recover under the insurance policy. The court also denied Penn's and Morey's motions against each other, leaving Penn and Morey as the only parties remaining for trial. The jury found for Morey.
 
 II. ISSUES AND DISCUSSION
 A. CLT's ISSUE
 
 5
 On appeal, CLT contends the district court should have granted summary judgment for it, rather than Penn. We review a district court's grant of summary judgment de novo, Pinney Dock & Transp. Co. v. Penn Cent. Corp., 838 F.2d 1445, 1472 (6th Cir.1988) (citations omitted), and apply state substantive law to state-law claims. Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938) (citing Baltimore & O.R. Co. v. Baugh, 149 U.S. 368, 401 (1893) (Field, J., dissenting)).
 
 
 6
 In the insurance policy, CLT and Hollingshed warranted that each unit in the apartment building had a smoke detector and acknowledged that failure to comply with this requirement suspended the insurance. The district court found that five or six unoccupied units did not have smoke detectors. Holding that according to "the plain language of the policy, the insurance was suspended at the time of the fire," the district court granted summary judgment.[1]
 
 
 7
 CLT claims the district court erred in deciding a question of fact by determining what "unit" meant under the contract. CLT also claims the district court misinterpreted Hollingshed's deposition, during which he testified that there were five or six rooms (as opposed to "units") without smoke detectors. CLT claims the court improperly read "room" as "unit." But Hollingshed himself used the terms "room" and "unit" interchangeably: He testified that under the insurance policy, each room had to have a smoke detector and proceeded to concede that not every one did.
 
 
 8
 When a contract is plain and unambiguous, its meaning is a question of law. Petty v. Sloan, 277 S.W.2d 355, 358 (Tenn.1955). We conclude that the district court did not err in finding that the contract was not ambiguous, and, further, the district court did not err in relying on the Hollingshed testimony in establishing that not every unit had a smoke detector.[2] The district court's order granting summary judgment to Penn on the claims of CLT is affirmed.
 
 B. PENN'S ISSUES
 
 9
 * After trial, Penn notified the district court that it had paid the Bank the value of its mortgage interest on the Building.[3] Penn contended that under the language of the insurance policy, and under Tennessee common law, it was entitled to declaration of its subrogation rights against CLT Partnership for the value of the payment to the Bank. In support of its motion, Penn cited a clause of the insurance policy providing that when Penn pays a mortgagee for a loss and claims there is no liability to the mortgagor, Penn shall, to the extent of the payment, be subrogated to the rights of the mortgagee.
 
 
 10
 The district court denied the motion, because Penn raised this issue only after the trial. This issue was not in the complaint, amended complaint, or the pretrial order. Since this was a motion under FED.R.CIV.P. 60(b)(6), we review the district court's ruling for an abuse of discretion. Douglass v. Pugh, 287 F.2d 500, 502 (6th Cir.1961). A district court abuses its discretion when it "applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact." First Technology Safety Sys., Inc. v. Depinet, 11 F.3d 641, 647 (6th Cir.1993) (citation omitted); see also Christian Schmidt Brewing Co. v. G. Heileman Brewing Co., 753 F.2d 1354, 1356 (6th Cir.1985) (citations omitted). We find an abuse of discretion only when we have "a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." McBee v. Bomar, 296 F.2d 235, 237 (6th Cir.1961).
 
 
 11
 Penn says that the enforceability of the policy mortgage clause and the parties' respective rights under the clause were before the district court "from the outset of the litigation." Perhaps so, but that does not mean that this specific issue was before the court. Penn also maintains it is "intellectually inconsistent and manifestly unfair" for the court to conclude both that the clause was enforceable and that Penn would not be permitted to recover, but that begs the question. It is not clear what is inconsistent or unfair about not allowing Penn to recover what it had not sought. We find no abuse of discretion in the district court's ruling.
 
 2
 
 12
 Penn next contends the district court erred by denying its FED.R.CIV.P. 50 motion which Penn had based on the contention that Hollingshed had sustained a prior fire loss not disclosed in the insurance application, and that the insurance-policy application contained other false statements.
 
 
 13
 In reviewing a ruling on a motion for judgment as a matter of law in a diversity action, we review legal issues de novo. And although we do not defer to the trial court's assessment of the sufficiency of the evidence, even if state law so requires, we apply a state law standard of review when a motion for judgment as a matter of law in a diversity action challenges the sufficiency of the evidence to support a jury's factual findings. K & T Enters., Inc. v. Zurich Ins. Co., 97 F.3d 171, 176 (6th Cir.1996). Penn's motion was the equivalent of a motion for directed verdict, rather than a motion for judgment non obstante veredicto, or J.N.O.V., in Tennessee courts, see generally K & T Enters., 97 F.3d at 176 (cautioning that federal courts must consider making that distinction, because many states have the separate motions rather than a single motion for judgment as a matter of law). So under Sixth Circuit and Tennessee law, we do not weigh the evidence that the jury reviewed after the district court denied the motion for judgment as a matter of law. Rather, we "must take the strongest legitimate view of the evidence in favor of the plaintiff, indulging in all reasonable inferences in [its] favor, and disregarding any evidence to the contrary." Conatser v. Clarksville Coca-Cola Bottling Co., 920 S.W.2d 646, 647 (Tenn.1995) (stating the standard of review when the trial court grants a directed verdict (quoting Williams v. Brown, 860 S.W.2d 854, 857 (Tenn.1993)). A directed verdict is proper in Tennessee "only if there is no material evidence in the record that would support a verdict for the plaintiff, under any of the theories that [it] has advanced." Id.
 
 
 14
 Penn asserts that, as a matter of law, Hollingshed owned a building known as the Thomas House at the time it burned, on February 3, 1991, and Hollingshed therefore had a prior fire loss that was not disclosed on the application. The first point is significant, because if Hollingshed did not own the Thomas House when it burned, he may not have sustained a previous loss. In the pretrial order the parties agreed that Hollingshed owned the Thomas House about 4 1/2 years before buying the Building. Because Hollingshed conveyed the Thomas House by warranty deed two days before that property burned, and lost no personal property in that fire, and because there was sufficient evidence to raise questions of fact on the other issues regarding misrepresentations on the application for the insurance policy, the district court did not err in denying the motion for judgment as a matter of law.
 
 
 15
 Next, Penn asserts that undisputed evidence demonstrated that Hollingshed had an insurable interest in the Thomas House when it burned and therefore had a prior fire loss that was not included in the application. Therefore, Penn concludes, the district court erred in not instructing the jury on insurable interests under Duncan v. State Farm Fire & Casualty Co., 587 S.W.2d 375, 376 (Tenn.1979). However, as Morey points out, whether Hollingshed had an "insurable interest" was not at issue in the court below.
 
 3
 
 16
 The parties acknowledge that in McIntyre v. Balentine, 833 S.W.2d 52, 57 (Tenn.1993), the Tennessee Supreme Court changed the law of negligence from "contributory" to "comparative." The court adopted the "49 percent rule," holding that so long as a plaintiff's negligence is less than the defendant's, the plaintiff may recover. Courts are to reduce a plaintiff's damages in proportion to his percentage of fault. Id.
 
 
 17
 Penn contends the district court erred by giving the jury a comparative-fault charge on the negligent-misrepresentation claim. In Tennessee, Penn says, negligent misrepresentation is a claim that has its roots not in the tort of negligence, but in the torts of fraud and deceit. Since no Tennessee decisions apply comparative fault to negligent misrepresentation, Penn says, the district court erred by giving a jury charge based on McIntyre, because that charge did not accurately advise the jurors of the law they were to apply.
 
 
 18
 Reviewing the district court's jury instructions to determine whether, taken as a whole, they fairly and adequately submit the issues in the action to the jury, Nolan v. Greene, 383 F.2d 814, 816 (6th Cir.1967), we observe that even if Penn is correct,[4] that does not require reversal or remand. By finding for Morey, the jury found Penn did not prove its negligent-misrepresentation claim. When the plaintiff does not prove its claim, it does not matter how much each party "contributed" to the damage, which is why the jury did not have to allocate percentages of fault.
 
 4
 
 19
 Lastly, Penn asserts that the district court abused its discretion by denying Penn's motion in limine on Tennessee Underwriter's failure to inspect the insured Building before the January 14, 1992, fire.
 
 
 20
 This argument is based on Federal Rule of Evidence 403. Penn claims that evidence demonstrating Tennessee Underwriters did not inspect the Building before it burned was much more prejudicial than probative, and that the evidence substantially prejudiced Penn's case.
 
 
 21
 Rule 403 does not ban evidence that is more prejudicial than probative, nor does it ban evidence that substantially prejudices a party's case. Rule 403 allows a trial court to exclude relevant evidence if "its probative value is substantially outweighed by the danger of unfair prejudice...." FED.R.EVID. 403. Penn's brief does not demonstrate a violation of Rule 403, and we find no abuse of discretion.
 
 III. CONCLUSION
 
 22
 We AFFIRM.
 
 
 
 *
 The Honorable James G. Carr, United States District Judge for the Northern District of Ohio, sitting by designation
 
 
 [1]
 The district court held that it could not grant summary judgment on the other ground Penn asserted. The other ground involved the misrepresentation that Hollingshed had suffered no other fire loss. The district court assumed there was a material misrepresentation but held that the misrepresentation came from Morey, who was, as a matter of Tennessee law, an agent for the insurer (Penn) and not the insured (Hollingshed and CLT)
 
 
 [2]
 CLT also contends the district court erred in considering an unsigned fire-inspection report, which CLT says was inadmissible hearsay. The report noted the absence of sufficient smoke detectors at the property. We need not consider the admissibility of the report, because the Hollingshed testimony suffices to establish that not every unit had a smoke detector
 Because the district court did not err in granting summary judgment for Penn as against CLT, we also need not consider Penn's contention that the court erred in (1) not finding that CLT breached a duty to disclose Hollingshed's prior fire loss when it applied for Penn insurance on the building at 1019 McCallie Avenue, and (2) holding that under TENN.CODE ANN. § 56-6-147, Penn would be estopped from denying coverage for CLT based upon any misrepresentations that Morey in CLT's insurance application.
 
 
 [3]
 Penn does not challenge the portion of the district court's order granting summary judgment to the Bank as against Penn
 
 
 [4]
 In an unpublished opinion, a state appellate court has held that McIntyre applies to negligent misrepresentation. See York v. Branell College, No. 02A01-9209-CV-257, 1993 WL 484203, at * 7 (Tenn.App. Nov. 23, 1993)